**UNITED STATES of America**

v.

**Bilal PRETLOW.**

Crim. No. 90–328.

United States District Court,
D. New Jersey.

Aug. 13, 1991.

Michael Chertoff, U.S. Atty. for N.J. by Alberto Rivas, Asst. U.S. Atty., Newark, N.J., for plaintiff.

Raymond Beam, Bloomfield, N.J., David Ruhnke, West Orange, N.J., for defendant.

## OPINION

HAROLD A. ACKERMAN, District Judge.

Among other counts, Bilal Pretlow ("Pretlow") is charged with engaging in a continuing criminal enterprise during which he is alleged to have intentionally killed or otherwise intentionally caused the killing of two people in violation of 21 U.S.C. § 848(e)(1)(A) (1988). The government has notified Pretlow that it intends to seek the death penalty for these offenses. Today's pre-trial motions focus on two issues related to the possible penalty phase of this case. More specifically, the government has moved to amend its notices of aggravating factors. Such notices set forth the factors which the government will seek to prove as its basis for the imposition of the death penalty. It has also moved for an order directing the New Jersey Superior Court to release Pretlow's juvenile records. Not surprisingly, Pretlow opposes both motions. Having reviewed both parties' briefs as well as listened to their oral arguments, this court now finds that: 1) the government must demonstrate good cause in order to amend the notices of aggravating factors; 2) the government has shown such good cause; 3) only those sections of Pretlow's juvenile record which fall within the scope of 21 U.S.C. § 848(n)(4) (1988) are currently relevant to these proceedings; and 4) under principles of comity and federalism, this court should not order the release of that limited portion of Pretlow's record.

## I. Amending the Notices of Aggravating Factors

### A. *Background*

On January 18, 1991, the government filed with the court and served Pretlow with two notices of aggravating factors. The first set forth those aggravating factors the government would seek to prove in the event Pretlow was convicted of Count Four of the Indictment which involved the murder of Melanie Baker. The second detailed those factors the government would again seek to prove in the event Pretlow was convicted of Count Five which involved the murder of Mutah Sessoms. Both notices alleged that Pretlow intentionally killed these victims, see 21 U.S.C. § 848(n)(1), that these murders were

committed after substantial planning and premeditation, see id. § 848(n)(8), and that Pretlow headed a continuing criminal enterprise involving the distribution of cocaine to people under age 21. See id. § 848(n)(11). In addition, the notice regarding the Baker murder alleged that she was particularly vulnerable due to her youth, see id. § 848(n)(9) while the notice regarding the Sessoms murder alleged that the murder was committed in a especially heinous, cruel, and depraved manner, see id. § 848(n)(12), and was designed to prevent Sessoms from cooperating as a government witness. See id. § 848(h)(1)(B) (permitting the government to rely on non-statutory aggravating factors).

In early June, 1991, the government sent Pretlow two superseding notices of aggravating factors. In addition to those factors I have already recounted, these new notices alleged two more. First, they charged that Pretlow "intentionally engaged in conduct intending that [Baker and Sessoms would] be killed or that lethal force would be employed against [them]" such that they were killed. See id. § 848(n)(1)(C). Second, they alleged that Pretlow previously had been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, which were committed on different occasions and involved the distribution of controlled substance. See id. § 848(n)(4). The notice regarding the Sessoms murder also added the word "torture" and substituted the word "or" for "and" in the aggravating factor set forth in accordance with section 848(n)(12).

Pretlow responded by notifying the government that he considered the superseding notices to be a legal nullity. The original notices, he claimed, could only be amended by permission of this court upon a showing of good cause. Without conceding that such permission was required, the government moved to formally amend the original notices of aggravating factors as I have outlined above. As part of it motion, the government submitted an affidavit by Assistant United States Attorney Kevin McCarthy which set forth the underlying reasons for the proposed amendments.

His affidavit, however, did not address the government's reasons for the delay in making these changes.

### B. *Discussion*

In cases like this one where the government intends to seek the death penalty for an offense encompassed within 21 U.S.C. § 848(e), section 848(h) requires that:

(1) ... [T]he attorney for the government, [at] a reasonable time before trial ... shall sign and file with the court, and serve upon the defendant a notice—

\*   \*   \*   \*   \*   \*

(B) setting forth the aggravating factors enumerated in subsection (n) of this section and any other aggravating factors which the Government will seek to prove as a basis for the death penalty.

It further provides that: "The court may permit the attorney for the Government to amend this notice for good cause shown." See id. § 848(h)(2).

■ Although the government contends that as long as a superseding notice of aggravating factors is filed within a reasonable time before trial, permission of the court is not required, I find this argument to be directly contrary to the clear meaning of the statute. By requiring the government to provide the court and defendant with *a notice* of aggravating factors within a reasonable time before trial, I find section 848(h)(1) to mean that the government must serve and file its *original* or *first* notice of aggravating factors within that time period. Any proposed amendments may be made thereafter only with the permission of the court upon a showing of good cause.

"Good cause" is not defined within this statute. Not surprisingly, parties take opposing views of its meaning. Given the potentially serious consequences of the attempted amendment, Pretlow argues that good cause should be restricted to excusable neglect. See *Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513 (3rd Cir.1987) (providing four factors for determining whether excusable neglect occurred). By contrast,

242

the government contends that this amendment is simply to provide the defendant with adequate pre-trial notice of those charges on which the government will rely during any sentencing proceeding. Consequently, the government stresses that a less stringent standard should be employed which would primarily focus on the good faith of the government and any resulting prejudice to the defendant. See *United States v. Carter*, 756 F.2d 310, 312 (3rd Cir.1985), cert. denied, 478 U.S. 1009, 106 S.Ct. 3307, 92 L.Ed.2d 721 (1986); *United States v. Myers*, 550 F.2d 1036, 1043 (5th Cir.1977), cert. denied, 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978).

Upon careful consideration, I find the government's argument more persuasive. Similar to any superseding indictment, an amendment of these notices has potentially onerous consequences for the defendant. However, when evaluating whether such an amendment should be permitted, the focus should be less on the substantive content of the information being communicated which will almost always be burdensome and more on whether notice was fairly provided in sufficient time for the defendant to adequately prepare his response. Put differently, this court sees no reason to insist on the more stringent excusable neglect standard. A definition of good cause which emphasizes the good faith of the government and any resulting prejudice to the defendant is sufficient to protect the defendant's and the public's interest in adequate notice.

█ In this case, I believe the government has demonstrated such good cause. Each amendment to the notices of aggravating factors appears to have a plausible connection to the facts of this case. Indeed, Pretlow does not contend otherwise. Although it also appears that all of these changes could have been included in the original notices, the government's delay does not appear to have been caused by bad faith as much as by a somewhat slow analysis of its case. Finally, I do not believe the defendant is not significantly prejudiced by the timing of these notices. Pretlow was originally served with the su-

perseding notices on June 17, 1991 at which time he was provided with at least informal notice of the government's intentions. Since the trial is not scheduled to start until November 4, 1991, Pretlow has now received formal notice with more than two months time to incorporate these changes into his trial strategy before the actual trial begins. Further, as Pretlow's pre-trial motions are not due until September 13, 1991, he is still free to raise any other issues arising out of these amendments. In light of all these circumstances, I find that the government has demonstrated good cause such that I will permit the proposed amendments to the notices of aggravating factors to be made.

II. Access to Pretlow's Juvenile Records.

Having determined that the government may amend the notices of aggravating factors, I now turn to whether this court should also order the Superior Court of New Jersey, Family Part, to provide the government with copies of Pretlow's juvenile records. The government argues it requires access to these records for three reasons: 1) they allegedly contain information regarding juvenile offenses Pretlow committed which are "punishable by a term of imprisonment of more than one year" and, hence, are within the scope of the aggravating factor set forth in accordance with section 848(n)(4); 2) they might be relevant for impeachment's purposes if Pretlow testifies; and 3) they might be relevant to the government's response to a possible mitigating factor which Pretlow might raise. Pretlow responds by contending that such records are highly confidential under New Jersey Law, not relevant to the present proceeding, and in any events are not accessible through order of this court. I will address first the relevancy arguments raised by each side and then discuss this court's authority to order the release of such records.

A. *Relevancy*

The government's primary purpose in seeking access to the Pretlow's juvenile records is to discover information concern-

ing any additional offenses Pretlow may have committed which would fall within the scope the aggravating factor set forth in 21 U.S.C. § 848(n)(4) (1988). Upon proper notification, section 848(n)(4) would permit a jury to consider as an aggravating factor that "[t]he defendant has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the distribution of a controlled substance." However, Pretlow contends that under New Jersey law, juvenile dispositions are not equivalent to adult criminal convictions and, therefore, by definition cannot be encompassed within the meaning of "offense" as it is used in section 848(n)(4). At least for the present time, I disagree.

■ Under New Jersey law:

No disposition under [the Code of Juvenile Justice] shall operate to impose any of the civil disabilities ordinarily imposed by virtue of criminal conviction, nor shall a juvenile be deemed a criminal by reason of such disposition.

The disposition of a case under [the Code of Juvenile Justice] shall not be admissible against the juvenile in any criminal or penal case or proceeding in any court *except for consideration in sentencing,* or as otherwise provided by law.

N.J.S.A. 2A:4A–48. As I interpret the plain meaning of this provision, juvenile dispositions may be weighed at "sentencing" which is essentially what the penalty phase of a capital case is. Moreover, at least superficially, section 848(n)(4) appears to encompass any offense—be it juvenile or adult—which is punishable by a term of imprisonment of more than one year. Pursuant to New Jersey Code of Juvenile Justice, a family court judge may sentence a juvenile to incarceration for more than one year for those offenses which if committed by an adult would constitute crimes of the third degree or higher. See N.J.S.A. 2A:4A–44(d)(1)(a)–(e). Therefore, I find that the part of Pretlow's juvenile records involving offenses for which he could have been incarcerated for more than one year

fall within the scope of 21 U.S.C. § 848(n)(4) and are, therefore, relevant to these proceedings.

■ However, it must be emphasized that the aforementioned section of Pretlow's juvenile record is the only portion I find to be currently relevant to these proceedings. Put differently, I find the government's two remaining arguments regarding the relevancy of Pretlow's juvenile records to these proceedings are simply unconvincing. Although the government argues it should have access to Pretlow's juvenile records for possible impeachment purposes, Federal Rule of Evidence 609(d) simply does not permit the use of such evidence against a defendant. See Fed. R.Evid. 609(d); *United States v. Harvey,* 588 F.2d 1201, 1203 (8th Cir.1978). Indeed, rarely is evidence of *any* witness' juvenile offenses found admissible for impeachment purposes. See, e.g., *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (defendant's sixth amendment right to confront witnesses overcomes state's interest in protecting confidentiality of juvenile record where cross-examination would have focused solely on witness' bias rather than on his general credibility); *United States ex rel. Laws v. Yeager,* 448 F.2d 74, 82 (3rd Cir.), cert. denied, 405 U.S. 976, 92 S.Ct. 1201, 31 L.Ed.2d 251 (1971) (no right to impeach the general credibility of a witness through evidence of juvenile dispositions); 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 609[09] (further detailing the general rule and its limited exceptions); see also N.J.S.A. 2A:4A–48 (generally prohibiting the admissibility of evidence regarding juvenile dispositions); *State v. Laws,* 50 N.J. 159, 233 A.2d 633, on reargument, 51 N.J. 494, 242 A.2d 333, cert. denied, 393 U.S. 971, 89 S.Ct. 408, 21 L.Ed.2d 384 (1967); *State v. Ramos,* 169 N.J.Super. 573, 405 A.2d 442 (L.1979). Similarly, the government's argument that it requires Pretlow's juvenile records to rebut a mitigating factor Pretlow might raise is unpersuasive. At this point in these proceedings, the government's contention amounts to little more than mere speculation and, as such, is insufficient to justify a wholesale

**244**

fishing expedition into what are otherwise highly confidential files.

## B. *Access*

■ Having determined that at least a limited portion of Pretlow's juvenile record may be relevant to these proceedings, I now turn to whether this court may order the Superior Court of New Jersey, Family Part to release any such documents to the government. I find I cannot.

Under New Jersey law, all juvenile records are confidential and strictly safeguarded from general public inspection. Access, however, may be obtained by certain parties under limited circumstances. More specifically, New Jersey law provides that juvenile records shall be made available to:

(1) Any court or probation department;

(2) The Attorney General or county prosecutor;

(3) The parents or guardian and to the attorney of the juvenile;

(4) The Division of Youth and Family Services, if providing care and custody of the juvenile;

(5) Any institution to which the juvenile is currently committed; and

(6) Any person or agency interested in a case or in the work of the agency keeping the records, by order of the court for good cause shown.

N.J.S.A. 2A:4A–60(a). It further permits the records of law enforcement agencies to be disclosed for law enforcement purposes to any other law enforcement agency of this state. N.J.S.A. 2A:4A–60(b).

I do not believe any of the aforementioned provisions permit *this court* to order the Superior Court of New Jersey, Family Part to release Pretlow's juvenile records to the *government*. For instance, while section 60(a)(1) would permit the release of Pretlow's records to this court, it clearly was not intended to allow this court to in turn release the records to any other party. Similarly, although section 60(a)(6) permits the release of juvenile record "by order of *the court* for good cause shown," section 22(i) makes plain "the court" was intended to mean the Superior Court of New Jersey,

Family Part and not any other. Finally, while section 60(b) arguably allows one law enforcement agency to release any juvenile records it maintains to any other "law enforcement agency of this State" without a court order, this provision plainly does not encompass the court records the government is also seeking and arguably might not even encompass the federal government within the definition of a "law enforcement agency of this State."

Put differently, Pretlow's juvenile records belong to the state. Moreover, in an explicit effort to protect the confidentiality of such records, the state has carefully limited their availability to certain parties under certain conditions. None of these statutory provisions seem to authorize this court to order the release of Pretlow's records to the government. They would, however, permit the Superior Court of New Jersey, Family Part to do so. In light of these circumstances, I believe the principles of federalism and comity demand that this court refrain from ordering the release of Pretlow's records and, instead, allow the Superior Court of New Jersey, Family Part the opportunity to do so. Of course, this court hopes that the Superior Court would act on any such motion with alacrity.

## CONCLUSION

For all the foregoing reasons, the government's motion to amend its notices of aggravating factors is granted while it motion for an order directing the Superior Court of New Jersey to release Bilal Pretlow's juvenile records is denied.