**UNITED STATES of America,**

v.

**Thomas PITERA, Defendant.**

**No. CR 90–0424(RR).**

United States District Court, E.D. New York.

May 26, 1992.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by David W. Shapiro, Elisa Liang, Mark S. Cohen, Asst. U.S. Attys., Brooklyn, N.Y., for the U.S.

Mathew J. Mari, New York City, Ruhnke & Barrett by David A. Ruhnke, Cheryl Hamer Mackell, New York City, for Thomas Pitera.

## MEMORANDUM AND ORDER

RAGGI, District Judge:

Count Three of the pending indictment against Thomas Pitera charges him with violating 21 U.S.C. § 848(e)(1)(A), a crime for which the maximum possible sentence is death. Defendant's constitutional challenges to the death penalty are addressed in a separate memorandum and order filed today.

As discussed in that memorandum, the government is required by law to advise defendant in advance of trial of the statutory and non-statutory aggravating factors on which it will rely in urging a jury to recommend a death sentence. 21 U.S.C. § 848(h)(1). The government filed its original notice on February 8, 1991. Therein it identified as *non-statutory* aggravating factors seven homicides attributed to Mr. Pitera in addition to the two charged in the capital count. These aggravating murders allegedly occurred prior to enactment of § 848(e)(1)(A). They are listed in the indictment as predicate acts to the racketeering crime charged in Count One.

On December 18, 1991, the government moved for leave to amend its original death penalty notice to permit these seven homicides to be considered as *statutory* aggravating factors under 21 U.S.C. § 848(n)(2). That particular statutory aggravating factor pertains when:

> [t]he defendant *has been convicted* of another Federal offense, or a State offense resulting in the death of a person, for which a sentence of life imprisonment or a sentence of death was authorized by statute.

(emphasis added). The government submits that, if Mr. Pitera is found guilty of racketeering and if any of the proved predicates are these additional homicides, he will stand convicted, even before sentence, of a crime carrying a possible life sentence. *See* 18 U.S.C. § 1963(a).

The defendant opposes the motion on two grounds: (1) that the government has failed to establish "good cause" for amendment as required by 21 U.S.C. § 848(h)(2); and (2) that a guilty verdict is not a conviction under § 848(n)(2). The court finds the second argument persuasive and, therefore, denies the motion to amend.

## Discussion

### I. Good Cause

Pursuant to 21 U.S.C. § 848(h)(2), "[t]he court may permit the attorney for the Government to amend [a death penalty notice] for good cause shown." In *United*

*States v. Pretlow,* 770 F.Supp. 239, 242 (D.N.J.1991), the court held amendment appropriate if the government's application was made in good faith and the defendant was not prejudiced. In this case the court finds that the government is acting in good faith. It further finds no prejudice to defendant since he has always been on notice of the government's intent to rely on the seven additional homicides in seeking the death penalty. The amendment seeks only to recategorize that conduct within the capital statutory scheme.

■ This very aspect of the proposed amendment supports its serious consideration by the court. Statutory aggravating factors narrow the class of persons eligible for the death penalty. Non-statutory aggravating factors assist the jury in its individualized consideration of the character of the defendant on trial and his particular crime. *See, e.g., Zant v. Stephens,* 462 U.S. 862, 878–79, 103 S.Ct. 2733, 2743–44, 77 L.Ed.2d 235 (1983). The difference is not without constitutional significance, as the various challenges addressed in this court's other memorandum and order of today indicate. The court and parties are dealing with one of the earliest applications of a new statute exposing a defendant to the most severe penalty tolerated by law. Under such circumstances, it is important that information be placed within its proper statutory category. Thus, if the court were persuaded that the seven additional homicides were appropriately categorized as statutory aggravating factors, it would find sufficient cause to permit amendment. Because it does not, however, leave to amend is denied.

## II. The Statutory Meaning of "Has Been Convicted"

■ The government's amendment is appropriate only if Congress intended persons who have been "convicted" of homicides under § 848(n)(2) to include individuals found guilty of such crimes but not yet subject to a formal judgment of conviction. Questions of legislative intent must be re-

solved, if possible, by looking to the plain meaning of the statutory language used by Congress. *E.g., West Virginia Univ. Hosps. v. Casey,* —— U.S. ——, 111 S.Ct. 1138, 1147, 113 L.Ed.2d 68 (1991) (court need not look beyond unambiguous statutory language); *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). Where Congress uses terms with settled meaning under the common law, a court must conclude, unless the statute itself dictates otherwise, that Congress so intends the terms to be understood. *See Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 739, 109 S.Ct. 2166, 2172, 104 L.Ed.2d 811 (1989).

■ The difficulty with following this maxim of statutory construction in this case is that at common law "the term 'conviction' has, and continues to have, one of two accepted meanings—the jury verdict or the judgment entered following the verdict." *Lewis v. Exxon Corp.,* 716 F.2d 1398, 1400 (D.C.Cir.1983); *accord United States v. Abreu,* 962 F.2d 1447 (10th Cir. 1992) (en banc). Thus, "conviction" is a linguistic "chameleon," whose meaning differs from statute to statute. *Harmon v. Teamsters, Chauffeurs & Helpers Local Union 371,* 832 F.2d 976, 978 (7th Cir. 1987). Indeed, even when Congress has seen fit to define the term, it has not fixed on a singular meaning. Thus, in *Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 112 n. 6, 103 S.Ct. 986, 991 n. 6, 74 L.Ed.2d 845 (1983), the Supreme Court noted that 15 U.S.C. § 80a–2(10), excluding certain persons from acting as investment advisers, defines "convicted" to include "a verdict, judgment, or plea of guilty, or a finding of guilt on a plea of nolo contendere, if such verdict, judgment, plea or finding has not been reversed, set aside, or withdrawn, whether or not sentence has been imposed," whereas 18 U.S.C. § 4251(e), providing for drug treatment programs, defines "conviction" and "convicted" to mean "the final judgment on a verdict or finding of guilty, a plea of guilty, or a plea of nolo contendere...." [1]

**1.** Although § 4251 was repealed in 1984, the

same definition of "conviction" is used in 28

Congress did not define the term "convicted" in the capital statute here at issue. Neither does the sparse legislative history shed any light on the matter. Under such circumstances, a criminal statute "must be strictly construed, and any ambiguity must be resolved in favor of lenity." *United States v. Enmons*, 410 U.S. 396, 411, 93 S.Ct. 1007, 1015, 35 L.Ed.2d 379 (1973); *accord Bifulco v. United States*, 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980) (applying rule of lenity to penalty aspects of a criminal statute); *United States v. McKeithen*, 822 F.2d 310, 315 (2d Cir.1987). This court therefore construes the phrase "has been convicted" according to its narrower definition at common law: a defendant "has been convicted" under § 848(n)(2) when a judgment of conviction has been entered against him, not simply when a guilty verdict has been returned.

■ The government's arguments opposing this narrower construction are unpersuasive. It notes, for example, that certain state courts have liberally construed capital statutes to permit guilty verdicts to qualify as aggravating convictions. *E.g., Pardo v. State*, 563 So.2d 77, 80 (Fla.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2043, 114 L.Ed.2d 127 (1991); *Childs v. State*, 257 Ga. 243, 257–58, 357 S.E.2d 48, 61, *cert. denied*, 484 U.S. 970, 108 S.Ct. 467, 98 L.Ed.2d 406 (1987); *Hopkinson v. State*, 632 P.2d 79, 171 (Wyo.1981), *cert. denied*, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). It also candidly admits, however, that many of the states permitting contemporaneous guilty verdicts to constitute statutory aggravating factors do so pursuant to express or implied legislative directive. *See, e.g., Thompson v. State*, 492 N.E.2d 264, 270–71 (Ind.1986) (distinguishing between narrow aggravating factor relating to defendant who "has been convicted of another murder" and broader aggravating factor that "defendant has committed another murder, at any time, regardless of whether he has been convicted of that other murder"); *Commonwealth v. Travaglia*, 502 Pa. 474, 496–97, 467 A.2d 288, 298–99 (1983) (because aggravating factor identified as a "convicted" defendant both one who faced a life sentence and one who was actually serving such a sentence, it was appropriate to assume that legislature intended the former category to include those who had been found guilty but not yet sentenced), *cert. denied*, 467 U.S. 1256, 104 S.Ct. 3547, 82 L.Ed.2d 850 (1984); *State v. Simants*, 197 Neb. 549, 556, 250 N.W.2d 881, 886, *cert. denied*, 434 U.S. 878, 98 S.Ct. 231, 54 L.Ed.2d 158 (1977). This court finds little guidance in these decisions, turning as they do on discrete capital sentencing schemes. In any event, the meaning of words in a federal statute is, by definition, a federal question. *E.g., Dickerson v. New Banner Inst., Inc.*, 460 U.S. at 111–12, 103 S.Ct. at 991–92.

No more helpful is the government's attempt to parse § 848 itself. For example, it contends that because § 848(n)(2) only requires that a defendant be convicted of a crime for which a sentence of life imprisonment or death was "authorized by statute"—without requiring actual imposition of such a sentence—Congress necessarily intended a conviction to occur at the time a jury verdict of guilty was returned, and not to demand entry of judgment. In fact, the court does not think the "authorized by statute" language is intended to define what constitutes a conviction. Rather, the phrase reflects Congress's focus on the necessary severity of the aggravating crime. Thus, what is critical is the maximum sentence a defendant faces under the law regardless of the term actually imposed. *See United States v. Johnson*, 497 F.2d 548, 550 (4th Cir.1974) (defendant was convicted of a felony even though he received a lenient sentence more in accord with a misdemeanor); *United States v. Beebe*, 467 F.2d 222, 225 (10th Cir.1972) (defendant was convicted of crime punishable by more than one year imprisonment even though sentence suspended), *cert. denied*, 416 U.S. 904, 94 S.Ct. 1607, 40 L.Ed.2d 108 (1974); *see also Commonwealth v. Travaglia*, 502 Pa. at 497, 467 A.2d at 299 (because aggravating factor's reference to an "offense . . . for which a

U.S.C. § 2901(f), pertaining to civil commitment and rehabilitation of narcotic addicts.

sentence of life imprisonment or death was imposable" shed no light on when a defendant is "convicted" of such a crime, court looks for guidance to other section of the statute).

The government further cites to other statutory aggravating factors in § 848(n) that use the phrase "has *previously* been convicted" or *"had previously* been convicted." [2] It contends that the modifier "previously" necessarily refers to convictions occurring sometime in the past. The lack of this modifier in § 848(n)(2), therefore, supports its application to contemporaneous findings of guilty, even without a formal judgment of conviction. The conclusion is far from obvious. Generally, when one focuses on "prior" or "previous" convictions, the concern is not so much on what constitutes the conviction, *i.e.,* a guilty plea or a judgment, but on the timing of the conviction relative to the commission of the crime that it will aggravate. *See, e.g., United States v. Chartier,* 933 F.2d 111, 113 (2d Cir.1991) (discussing the various policies that could inform different timing decisions under the sentencing guideline "career offender" provisions). *United States v. Bernier,* 954 F.2d 818 (2d Cir.1992), does little to help the government's position. The court in that case relied on Congress's distinguishment be-

tween "second" and "subsequent" convictions to support imposition of an enhanced sentence under 18 U.S.C. § 924(c) for the second of two firearm felonies prosecuted contemporaneously. The fact remains, however, that Bernier was formally sentenced on the first firearms violation before the more severe sentence was pronounced for his "second" conviction.

■ The uncertainty as to Congress's intent in its omission of the word "previously" in § 848(n)(2) is compounded by its inclusion of that precise modifier in an otherwise virtually identical list of aggravating factors in the most recent draft version of 18 U.S.C. § 3592(c). That legislation is part of a proposed package dramatically increasing the number of federal crimes for which the death penalty could be imposed. *See* H.R. 3371, 102nd Cong., 1st Sess. (1991), *reprinted in* H.R.Conf.Rep. No. 405, 102nd Cong., 1st Sess. 5 (1991).[3] The court recognizes that the views of a subsequent Congress always form a "hazardous basis" for inferring the intent of an earlier one. *Firestone Tire v. Bruch,* 489 U.S. 101, 114, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989) (quoting *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960)). But here, neither the Congress that enacted § 848(n)(2) nor the Con-

**2.** The relevant sections, 21 U.S.C. § 848(n)(3), (4), and (10), state:

(3) The defendant has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury upon another person.

(4) The defendant has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the distribution of a controlled substance.

(10) The defendant had previously been convicted of violating this subchapter or subchapter II of this chapter for which a sentence of five or more years may be imposed or had previously been convicted of engaging in a continuing criminal enterprise.

**3.** Among the proposed statutory aggravating factors pertinent to this court's inquiry are those cited in 18 U.S.C. § 3592(c)(3), (4), (10) and (12):

(3) The defendant has previously been convicted of another Federal or State offense resulting in the death of a person, for which a sentence of life imprisonment or a sentence of death was authorized by statute.

(4) The defendant has previously been convicted of two or more Federal or State offenses, punishable by a term of imprisonment of more than one year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person.

(10) The defendant has previously been convicted of two or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the distribution of a controlled substance.

(12) The defendant had previously been convicted of violating title II or title III of the Controlled Substances Act for which a sentence of 5 or more years may be imposed or had previously been convicted of engaging in a continuing criminal enterprise.

gress that is considering 18 U.S.C. § 3592(c), in performing one of the most important legislative tasks related to the enactment of a capital punishment statute, *i.e.*, the narrowing of the class of persons eligible for the death penalty, provides so much as a clue as to why it omitted an adverb on one occasion only to include it in another. Under such circumstances, this court fails to find from the absence of the word "previously" in § 848(n)(2) any evidence of Congress's intent to have convictions include contemporaneous jury findings of guilty.

Finally, the government points this court to various federal decisions that, in other contexts, interpret the word "convicted" or "conviction" to include pleas of guilty or verdicts of guilty. For example, in *Dickerson v. New Banner Inst., supra*, the Supreme Court equated "a plea of guilty and its notation by the state court, followed by a sentence of probation, with being 'convicted'" for purposes of prosecution under 18 U.S.C. § 922(g), a statute prohibiting gun trafficking by a convicted felon. 460 U.S. at 114, 103 S.Ct. at 992. The case did not, in fact, confront the question here presented, for as the quoted passage makes clear, the state court defendant was sentenced prior to receiving his firearms license. At issue was not whether his guilty plea alone constituted a conviction, but whether the state court's subsequent expunction of his conviction was relevant for purposes of § 922(g). The court concluded it was not, since "expunction does not alter the legality of the previous conviction and does not signify that the defendant was innocent of the crime to which he pleaded guilty." *Id.* at 115, 103 S.Ct. at 993. The broad reading of § 922(g) was, moreover, supported by the statute's specific inclusion of indicted defendants—as well as convicted ones—within its scope, making plain Congress's intent "to keep firearms out of the hands of presumptively risky people." *Id.* at 112 n. 6, 103 S.Ct. at 992 n. 6.

Relying on *Dickerson*, the Third Circuit, in *United States v. Balascsak*, 873 F.2d 673 (3rd Cir.1989), held that a defendant stood convicted of a prior crime for purposes of yet another firearms statute even though his motion for resentencing had been granted. The court observed that, "since expunging the record does not nullify a conviction, it is difficult to see why vacating a sentence with the intention of resentencing should nullify the conviction." *Id.* at 677. Here again, the court was not addressing whether a plea or finding of guilty absent sentence constitutes a conviction.

In *United States v. Vanderbosch*, 610 F.2d 95 (2d Cir.1979), the Second Circuit did find a guilty verdict for which no sentence had yet been imposed or judgment entered sufficient to constitute a conviction for purposes of impeachment pursuant to Fed. R.Evid. 609(a). It reasoned that, since a jury verdict could not be withdrawn and was rarely overturned, the entry of "[j]udgment, as a procedural formality, has little effect on the probative value of the conviction for purposes of attacking credibility." *Id.* at 97. The holding must be viewed with due regard for the factors underlying Rule 609(a): providing the jury with information that may be helpful in evaluating the credibility of witnesses without unduly risking conviction based on evidence of bad character. *See* 3 J. Weinstein & M. Berger, *Weinstein's Evidence*, § 609[02] at 609–28 (1991). In this context, the entry of formal judgment "has little effect." But, as will be discussed below, the purpose of § 848(n)(2) is very different.

The court finally considers the government's reliance on *United States v. Adams*, 771 F.2d 783 (3d Cir.), *cert. denied*, 474 U.S. 1013, 106 S.Ct. 545, 88 L.Ed.2d 474 (1985), in which the phrase "has previously been convicted," as used in 18 U.S.C. § 3575(e)(1), the special offender enhancement provision of the Organized Crime Control Act of 1970 (repealed 1984), was held to include a verdict of guilty before sentence and entry of judgment. In reaching this result, the Third Circuit noted that, in the relevant legislative history, Congress sometimes referred to a conviction in its broad sense to include a plea or finding of guilty, and at other times seemed to be referring only to a formal judgment. The

"primary purpose" of the law, however, was to ensure that those "prone to engage in further crimes are imprisoned long enough to give to society reasonable protection." *Id.* at 789 (quoting S.Rep. 617, 91st Cong., 1st Sess. 164 (1970)). Because this purpose was better served by liberally construing convictions to include verdicts and pleas of guilty, the court, without discussing the rule of lenity, adopted this expansive definition.

In this case, there is no Senate or House Report for the capital statute under consideration. The floor debates are silent as to Congress's reasons for enacting § 848(n)(2). But this much is clear: the purpose of statutory aggravating factors in a capital sentencing scheme is primarily to ensure the constitutionally-mandated *narrowing* of the class of persons eligible for the death penalty. *See Zant v. Stephens,* 462 U.S. at 878, 103 S.Ct. at 2743. Although the legislature may choose from various factors those that most precisely identify the class it has in mind, neither it, nor the court, can ignore the magnitude of the task. Specificity and precision are, of course, the ideal. But where a statutory aggravating factor is not drawn with precision, where it is subject to two possible interpretations, caution mandates selection of the narrower, lest classes of individuals not specifically identified by Congress be subject to irrevocable punishment. This principle has informed judicial interpretation of deportation statutes. *See, e.g., Lennon v. I.N.S.,* 527 F.2d 187 (2d Cir.1975). Therein, the court explained that since deportation surpasses in severity "all but the most Draconian criminal penalties," the statutory criteria for deportation must be given the narrowest of readings consistent with Congress's purpose. *Id.* at 193. Obviously this case involves a potential sentence even more severe than deportation and, thus, strict adherence to the rule of lenity is appropriate.

The government finally contends that limiting the "has been convicted" factor in § 848(n)(2) to formal judgments of conviction exalts form over substance and thereby unduly hampers the full consideration of a defendant's character that is the goal of individualized sentencing. Since the government remains free to proffer evidence of the additional homicides as *nonstatutory* aggravating factors, the court's ruling in no way limits individualized sentencing. *See Zant v. Stephens,* 462 U.S. at 878–79, 103 S.Ct. at 2743–44. It only ensures that the class of persons eligible for death penalty consideration is no broader than clearly intended by Congress.

### *Conclusion*

Because Congress has failed to indicate which of two common meanings it intended for the phrase "has been convicted" as used in the statutory aggravating factor listed in § 848(n)(2), and because statutory aggravating factors serve to narrow the class of persons eligible for capital punishment, the rule of lenity compels this court to interpret the phrase in its strictest sense to require a judgment of conviction and not simply a plea or verdict of guilty. Since the government's proposed amendment of its notice of statutory aggravating factors does not come within this narrow definition, the motion to amend the capital notice is denied.

SO ORDERED.