**UNITED STATES of America**

v.

**Humberto Pepin TAVERAS, also known as "Tony" and "Luis Rosario," Defendant.**

**No. 04–156 (S–4).**

United States District Court, E.D. New York.

June 6, 2007.

MEMORANDUM & ORDER MOTION TO AMEND/CORRECT NOTICE OF INTENT TO SEEK A SENTENCE OF DEATH

WEINSTEIN, Senior District Judge.

## I. INTRODUCTION

The government moves for leave to file an amended notice of intent to seek a sentence of death. *See* 18 U.S.C. § 3593(a) and 21 U.S.C. § 848(h). It seeks to amend the notice to include one additional statutory aggravating factor for each murder count, that "defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim." 18 U.S.C. § 3592(c)(6). For the reasons set forth below, evidence may be introduced as to defendant's alleged use of a knife to cut one man's throat while he was believed to still be alive but not as to allegations of post-mortem dismemberment. The motion is granted in part and denied in part.

## II. FACTS

### A. Procedural History

On February 20, 2004, Defendant Humberto Pepin Taveras ("Pepin") was indicted for two counts of murder pursuant to 21 U.S.C. § 848(e)(1)(A), enacted as part of the Anti–Drug Abuse Act of 1988 ("ADAA"). The grand jury issued a superceding indictment on June 18, 2004, adding a charge of obstruction of justice. On January 14, 2005, the grand jury returned a second superceding indictment which included the special findings necessary for the government to seek the death penalty.

On March 3, 2005, the government filed its initial notice of intent to seek a sentence of death for the murders of Jose Rosario and Carlos Madrid. In its initial notice of intent the government included a

Lee Joshua Freedman, United States Attorneys Office, Brooklyn, NY, for United States of America.

non-statutory aggravator entitled "future dangerousness" which was divided into three sub-categories, one of which was "lack of remorse." In support of this factor the government relied on defendant's statements and actions during the course of and following the offenses, including the post-mortem dismemberment of both victims. On September 14, 2005, defendant moved, among other things, to strike the non-statutory aggravator of "future dangerousness." The court excluded evidence of the post-mortem dismemberment of both victims on June 29, 2006.

On October 20, 2005, the grand jury returned a third superceding indictment adding a third murder charge pursuant to 18 U.S.C. § 924(j)(1). The court granted defendant's motion to dismiss the section 924(j)(1) murder count.

On March 23, 2006, the government moved to file an amended notice of intent that included a non-statutory aggravating factor titled "Child Endangerment Factor" for each murder count. The government's motion was granted, but the non-statutory aggravating factor was stricken.

On June 29, 2006, the Federal Death Penalty Act of 1994 procedures ("FDPA") were held to replace the ADAA's death penalty procedures in this case. *United States v. Taveras*, 436 F.Supp.2d 493 (E.D.N.Y.2006).

On January 9, 2007, the grand jury handed down a fourth superceding indictment. The government requested leave to file an amended notice of intent to seek a sentence of death. The fourth superceding indictment includes an additional statutory aggravating factor for each murder count: that defendant committed the offense in an especially heinous, cruel or depraved manner in that the offense involved serious physical abuse to his victims. 18 U.S.C. § 3592(c)(6); 21 U.S.C. § 848(n)(12) (1996).

### B.   Evidence Relied On

Defendant is now charged with committing two murders while engaged in a conspiracy to possess and possession with intent to distribute cocaine and heroin, a violation of section 841(b)(1)(A).

In support of its motion to add aggravating factor 18 U.S.C. § 3592(c)(6), with respect to count one, the government alleges that defendant shot but did not initially kill Jose Rosario. "After determining that Rosario was still alive and in considerable pain, Pepin then used a knife to cut Rosario's neck." (Gov't motion to amend, p. 5). "Pepin allowed Rosario to slowly and painfully bleed." *Id.* After he died Pepin dismembered Rosario's body and placed it into garbage bags, Pepin and a co-conspirator drove to Yonkers where Pepin dumped the bags.

With respect to count two, the new aggravating factor is based on allegations that defendant dismembered Carlos Madrid after murdering him. (Gov't motion to amend, p. 5). After Madrid's death, defendant dismembered Madrid's body before placing Madrid's body parts in garbage bags, driving Madrid's car to Queens, dumping the bags, and setting Madrid's car on fire. *See United States v. Taveras*, 436 F.Supp.2d at 513 (Citing Gov't Letter of April 5, 2005, at 2–3.)

## III.   LAW

### A.   Requirement to Show Good Cause

██   Both FDPA and the former ADAA require the government to show good cause before filing an amended notice. *See* 18 U.S.C. § 3593(a) ("The court may permit the attorney for the government to amend the notice [of intent to seek a sentence of death] upon a showing of good cause."); 21 U.S.C. § 848(h)(2) (repealed) ("The court may permit the attorney for

the Government to amend this notice for good cause shown."). Good cause is demonstrated where "the government's application was made in good faith and the defendant was not prejudiced." *United States v. Pitera,* 795 F.Supp. 571, 573 (E.D.N.Y.1992).

### B. Admissibility of Evidence

#### 1. Standard of Review

Unlike Federal Rule of Evidence 403 and Title 21's ADAA which permit exclusion of evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," the FDPA permits exclusion of evidence when its "probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." 18 U.S.C. § 3593(c) (emphasis supplied). Title 18's FDPA raises the bar for admission of prejudicial evidence. See *United States v. Taveras,* 436 F.Supp.2d at 500; *See also United States v. Sampson,* 335 F.Supp.2d 166, 177 (D.Mass.2004) (noting that FDPA results in exclusion of more evidence than Rule 403).

■ Wide discretion is lodged in the district court to exclude evidence that is, on balance, unduly prejudicial. Out of respect for "trial court [ ] expertise," *United States v. Awadallah,* 436 F.3d 125, 131 (2d Cir.2006), evidentiary rulings are reviewed solely for abuse of discretion. *Old Chief v. United States,* 519 U.S. 172, 174 n. 1, 117 S.Ct. 644, 136 L.Ed.2d 574(1997). *See also United States v. Salameh,* 152 F.3d 88, 110 (2d Cir.1998) ("A district court is obviously in the best position to do the balancing mandated by Rule 403. We will second-guess a district court only if there is a clear showing that the court abused its discretion or acted arbitrarily or irrationally." (internal quotation marks and citations omitted)). "[S]o long as the district court

has conscientiously balanced the proffered evidence's probative value with the risk for prejudice, its conclusion will be disturbed only if it is arbitrary or irrational." *United States v. Awadallah,* 436 F.3d at 131 (affirming district court's exclusion of grand juror testimony in perjury trial). *See also Hester v. BIC Corp.,* 225 F.3d 178, 181 (2d Cir.2000) ("A district court's evidentiary rulings will be disturbed only if they are manifestly erroneous." (internal quotation marks omitted)).

#### 2. 18 U.S.C. § 3592(c)(6)

■ The aggravating factor set out in 18 U.S.C. § 3592(c)(6) requires evidence that "the defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim."

The United States Court of Appeals for the Fifth Circuit has defined the terms heinous, cruel, depraved, torture and serious physical as follows:

"Heinous" means extremely wicked or shockingly evil, where the killing was accompanied by such additional acts of torture or serious physical abuse of the victim as set apart from other killings.

"Cruel" means that the defendant intended to inflict a high degree of pain by torturing the victim in addition to killing the victim.

"Depraved" means that the defendant relished the killing or showed indifference to the suffering of the victim, as evidenced by torture or serious physical abuse of the victim.

"Torture" includes mental as well as physical abuse of the victim. In either case, the victim must have been conscious of the abuse at the time it was inflicted; and the defendant must have specifically intended to inflict severe mental or physical pain or suffering

upon the victim, apart from killing the victim.

"Serious physical abuse" means a significant or considerable amount of injury or damage to the victim's body which involves a substantial risk of death, unconsciousness, extreme physical pain, protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty . . .

Pertinent factors in determining whether a killing was especially heinous, cruel, or depraved include: infliction of gratuitous violence upon the victim above and beyond that necessary to commit the killing; needless mutilation of the victim's body; senselessness of the killing; and helplessness of the victim

*United States v. Jones,* 132 F.3d 232, 250 n. 12 (5th cir.1998).

The requirement that the commission of the crime include torture or serious physical abuse contemplates something more than the amount of injury necessary to cause death. *United States v. Hall,* 152 F.3d 381, 414 (5th Cir.1998) (requiring that "killing be accompanied by such additional acts of torture or serious physical abuse of the victim as set apart from other killings"). *See, e.g., United States v. Sampson,* 335 F.Supp.2d at 180.

■ Federal courts have diverged over whether or not the "serious physical abuse" must occur before the victim's death. *See United States v. Pretlow,* 779 F.Supp. 758, 773 (D.N.J.1991) (restricting evidence of serious physical injury to harm inflicted before victim's death). *But see United States v. Jones,* 132 F.3d at 250 n. 12 ("Serious physical abuse . . . may be inflicted either before or after death"). Whether the abuse takes place before or after death "the focus is in large part on the defendant's intent and state of mind." *United States v. Sampson,* 335 F.Supp.2d

at 205. "The infliction of serious physical abuse is evidence that the defendant was especially depraved because he relished the killing, even if the abuse occurred after the victim was unconscious or dead. If, on the other hand, the victim was conscious, serious physical abuse is evidence that the defendant was especially cruel because he intended to inflict a high degree of pain in addition to killing the victim." *Id.*

■ In determining whether the offense was especially heinous, cruel, or depraved, the jury is asked to consider whether there was "infliction of gratuitous violence upon the victim *above and beyond that necessary* to commit the killing" or *"needless mutilation of the victim's body."* *United States v. Hall,* 152 F.3d at 415 (emphasis in text).

## IV. APPLICATION OF LAW TO FACTS

### A. Requirement to Show Good Cause

■ Procedurally the motion to amend is unobjectionable. No prejudice-in a technical procedural sense-would inure to defendant in this instance, because he has had notice of the government's intent to introduce the evidence of post-mortem dismemberment since at least April 2005, when it detailed its allegations in a letter opposing defendant's motion to strike the government's initial notice of intent. *See* Gov't Letter of April 5, 2005. The new proposed notice would not add new allegations, but merely reorganize them in response to this court's rulings. *See United States v. Pitera,* 795 F.Supp. at 573 (finding no prejudice to defendant where he had long "been on notice of the government's intent to rely on the seven additional homicides in seeking the death penalty. The amendment seeks only to recategorize that conduct within the capital statutory scheme"). In addition, trial has been

stayed pending appeal to the Second Circuit Court of Appeals, giving the defendant ample time to prepare. There is no indication that the government has acted in bad faith. The government is not procedurally barred from amending its notice.

The motion to amend the notice is granted.

## B. Admissibility of Evidence

### 1. Use of a Knife to Cut Victim's Throat While He Was Still Alive

■ Evidence with respect to count one, that the defendant cut the victim's throat after having shot him, but while he was still alive, leaving him to bleed to death in a bathtub while he was arguably conscious, will be admitted. The evidence is highly probative of an offense committed in a heinous, cruel or depraved manner. The act of cutting the victim's throat could fit within the definitions of both torture and serious physical abuse. This action constituted part of the direct commission of the offense, and is the type of act contemplated by the statute. Defendant's alleged decision to use a knife to cut the victim's throat after having shot him was a measure above and beyond what was necessary to kill Rosario. Leaving him alone in a bathtub to bleed to death was a form of torture; he was restrained by the tub, could not seek help, but was arguably conscious of his life ebbing as his blood drained away.

The danger of unfair prejudice does not outweigh the evidence's probative value. It is not likely to prevent the jury from making a rational determination of whether the defendant committed the act in a heinous, cruel or depraved manner, since it speaks directly to the manner in which the crime of killing, murder, was committed.

### 2. Post–Mortem Dismemberment

#### a. Probative Value

■ The defendant's alleged acts of post-mortem dismemberment are not highly probative of the proposed aggravating factor. Defendant's actions do not reflect the types of activities which fall within the ambit of 18 U.S.C. § 3592(c)(6).

Federal courts have upheld the use of this aggravating factor when excessive measures have been used in the commission of a homicide. In *United States v. Hall* the court permitted evidence that defendants took turns hitting the victim with a shovel and gagged the victim before covering her with gasoline because the circumstances of the offense indicated that Hall and his co-defendants "relished the killing." 152 F.3d at 415. *See also United States v. Sampson*, 335 F.Supp.2d at 208 (noting that jury could reasonably infer that defendant intended to inflict gratuitous serious physical harm by cutting the first victim's throat and stabbing the second victim in chest and throat 15 times).

There is no evidence that defendant "relished" these murders. There is no indication from defendant's alleged conduct that he committed acts of gratuitous violence in dismembering the corpses. The post-mortem dismemberment of the victims was for the rational purpose of concealing and disposing of the corpses in order to evade prosecution. The fact that the victims were dismembered post-mortem in an attempt to conceal the crime is not evidence relevant to heinous, cruel or depraved manner issues. *Cf. Sochor v. Florida*, 504 U.S. 527, 537, 112 S.Ct. 2114, 119 L.Ed.2d 326 (1992)(affirming decision of Supreme Court of Florida holding that evidence of method of disposal of victim's body was irrelevant as a factor in determining heinousness).

The post-mortem dismemberments of Rosario and Madrid must be separated from the act of homicide. *See United States v. Taveras*, 436 F.Supp.2d 493. The United States District Court for the District of New Jersey held in *United States v. Pretlow* that the heinousness aggravating factor was facially valid only "to the extent that it require[d] proof that [defendant] subjected [the victim] to serious physical abuse *prior to his death*" 779 F.Supp. at 773 (emphasis added). *See also United States v. Pitera*, 795 F.Supp. 546 (restricting evidence of serious physical injury to harm inflicted *before* victim's death); *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990) (upholding Arizona Supreme Court finding that a crime is committed in an especially cruel manner when the perpetrator inflicts physical abuse *before* the victim's death); *Medlock v. Ward*, 200 F.3d 1314 (10th Cir.2000) (Upholding "heinous, atrocious, or cruel" aggravating circumstance as narrowed by the Oklahoma courts to require torture or serious physical abuse characterized by *conscious suffering* ); 1 Leonard B. Sand, et al., Modern Federal Jury Instructions, Inst. 9A–11 (recommending that instructions to jury do not construe post-mortem abuse to murder victim's body as "serious physical abuse" within the meaning of 18 U.S.C. § 3592(c)(6)). *But see United States v. Hall*, 152 F.3d at 415 (serious physical abuse … may be inflicted either before or after death and does not require that the victim be conscious of the abuse at the time it was inflicted); *accord United States v. Chanthadara*, 230 F.3d 1237 (10th Cir.2000).

While the Court of Appeals for the Fifth Circuit held in *United States v. Hall* that it was not error for the district court to allow the jury to consider conduct that occurred after the victim lost consciousness, the court did so because it found that such conduct constituted evidence that the "killing was committed in a depraved manner in that [defendant] 'relished the killing.' " 152 F.3d. at 415. In *Hall* the serious physical abuse alleged occurred at the time of the killing. It constituted gratuitous violence above and beyond the amount of force necessary to cause death. Unlike the instant case, the conduct alleged in *Hall* did not have any purpose beyond inflicting damage to the living victim.

The capital offenses relating to the deaths of Jose Rosario and Carlos Madrid were completed when the victims expired. Later mutilation of the corpses for the purpose of concealment and disposal was not the kind of act contemplated in providing for the consideration of this aggravating circumstance. Given the circumstances surrounding the post-mortem dismemberment of the victims in the present case this evidence does not constitute "serious physical abuse" within the meaning of 18 U.S.C. 3592(c)(6).

### b. Prejudicial Effect

Based on a prior indictment in this case, it was held that "evidence of … post-mortem dismemberment [would] not be received." *United States v. Taveras*, 436 F.Supp.2d at 515. The government proposes an amendment to their notice of intent to seek a sentence of death to introduce evidence of defendant's post-mortem dismemberment of the victims at the penalty phase of the trial in support of a new aggravating factor.

For the reasons stated above the evidence of post-mortem dismemberment is not probative of whether the offense was committed in a heinous, cruel or depraved manner. Even if the post-mortem dismemberment was probative of this aggravating factor, its probative value would be outweighed by the danger of unfair prejudice. *See* Fed.R.Evid. 403, 28 U.S.C. The evidence must be excluded.

The court reserves wide discretion to exclude evidence found to be unduly prejudicial. In the death penalty phase of a capital trial, jurors are responsible for using reasoned "moral" consideration to determine whether a fellow human deserves to be executed for his or her crimes. *Id.* at 514. The danger of allowing evidence of post-mortem dismemberment is that the jurors may react with such disgust at the defendant's repugnant actions, that they will be unable to carefully weigh the factors necessary to determine a fair sentence. *Id.* at 515. *See also Hartman v. Bagley,* 333 F.Supp.2d 632, 664 (N.D.Ohio 2004) (finding "deeply troubling the prosecutor's references to the gruesome nature of the crime and the post-mortem mutilation of the body. Such facts do not go to the aggravating circumstance at issue in this case").

"It is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." *Gardner v. Florida,* 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977). By excluding evidence of postmortem dismemberment, the "risk [of] a verdict impermissibly based on passion, not deliberation" is minimized. *Payne v. Tennessee,* 501 U.S. 808, 836, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (Souter, J., concurring). Nothing in the government's motion justifies departure from the court's previous ruling excluding this evidence in *United States v. Taveras, supra.*

## V. CONCLUSION

Evidence of defendant's use of a knife to cut the throat of Jose Rosario while he was alive is permitted. Evidence of defendant's alleged post-mortem dismemberment of both victims is excluded.

The court has no view of whether this new motion and decision moot the prior

appeal taken by the United States regarding dismemberment and other evidence.

The government's motion is granted in part and denied in part.

SO ORDERED.