832 F.2d 976
 126 L.R.R.M. (BNA) 2697, 98 A.L.R.Fed.
473, 56 USLW 2245,
107 Lab.Cas. P 10,184
 William HARMON, Plaintiff-Appellant,
v.
TEAMSTERS, CHAUFFEURS & HELPERS LOCAL UNION 371; Chester
Kelly, President of Local Union 371; and William
E. Brock III, Secretary of Labor,
Defendants-Appellees.
 No. 87-1029.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 11, 1987.
Decided Oct. 15, 1987.
 
 John O. Moeller, Davenport, Iowa, for plaintiff-appellant.
 Marileigh D. Dover, Atty. Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for defendants-appellees.
 Before WOOD and POSNER, Circuit Judges, and GRANT, Senior District Judge.*
 POSNER, Circuit Judge.
 
 
 1
 We are asked to decide a question of first impression: whether a guilty plea followed by a sentence of probation but no judgment of conviction is nevertheless a conviction within the meaning of section 504 of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. Sec. 504, which bars certain convicted persons from serving as officers of unions.
 
 
 2
 In 1985 William Harmon, an officer of a Teamsters local, pleaded guilty in an Iowa state court to arson. He was sentenced under provisions of the Iowa Code that allow the court to enter an order of deferred judgment in lieu of a judgment of conviction. Iowa Code Secs. 901.5(1), 907.3. He was sentenced to five years probation and also ordered to make restitution to the victim of the arson of some $35,000. If he violates the terms of probation his probation will be revoked and he can be given any lawful sentence for his crime. If he doesn't violate the terms of his probation, then at the end of the five-year term the case against him will be dismissed and the public record of the criminal proceeding will be expunged. However, a confidential record, available only to judicial and prosecutorial personnel, will be retained. A person sentenced under the deferred-judgment procedure does not lose his citizenship rights (e.g., the right to vote).
 
 
 3
 Under section 504(a) of the Labor-Management Reporting and Disclosure Act, anybody "who has been convicted of or served any part of a prison term resulting from his conviction of" any one of a large number of crimes, including arson, is forbidden to serve as an officer (or director, consultant, etc.) of a union "during or for the period of thirteen years after such conviction or after the end of such imprisonment, whichever is later." The period of disability can be reduced, however, if the convicting court sets a shorter period (no shorter than three years, though)--which wasn't done here; or if the person's "citizenship rights, having been revoked as a result of such conviction, have been fully restored"--which couldn't be done here, since Harmon never lost his citizenship rights; or if the U.S. Parole Commission lifts the ban--which it hasn't done. The statute does not define conviction but does say that a person shall be deemed to be "under the disability of 'conviction' from the date of the judgment of the trial court...." 29 U.S.C. Sec. 504(c).
 
 
 4
 Harmon remained in his union job after being sentenced by the Iowa court, but the Department of Labor got wind of the matter and sent him and the union a "504" notice, i.e., a threat to prosecute him under section 504(b), which sets criminal penalties for willful violations of the statute--whereupon the union suspended Harmon indefinitely, without pay. He then brought this suit against the union, its president, and the Secretary of Labor, seeking a declaration that section 504 does not apply because he was not "convicted" within the meaning of the statute. The district court held that he had been convicted, and entered judgment for the defendants.
 
 
 5
 We do not understand why Harmon named the union and its president as defendants. He seeks no relief against them. Maybe he has a contract of employment with the union that was violated if, as he argues, section 504 is inapplicable to his Iowa "conviction"; whether, if so, he can maintain this suit against the union and its president, either as a main federal claim or as a pendent claim, is not a question we need decide, since, as we have said, he seeks no relief against either of these defendants. The declaratory judgment action against the Secretary of Labor is proper, and nothing else is necessary to confer federal jurisdiction. The Secretary's interpretation of section 504 which triggered the "504 notice" and in turn caused the union to suspend Harmon is an example of an administrative action that has "an immediate and substantial impact upon the respondent" even before any formal enforcement action (here, a criminal proceeding against Harmon) is taken, and that can therefore be made the target of an injunctive or declaratory suit. Gardner v. Toilet Goods Ass'n, Inc., 387 U.S. 167, 171, 87 S.Ct. 1526, 1528, 18 L.Ed.2d 704 (1967); see Presser v. Brennan, 389 F.Supp. 808, 811-12 (N.D.Ohio 1975). Indeed, because the union fired Harmon, there was little likelihood that a proceeding (criminal or otherwise) would be brought against him under section 504, so that the present suit was the only realistic means he had of obtaining judicial review of the Secretary's action.
 
 
 6
 We come to the merits. The word "conviction" is a chameleon, see, e.g., United States v. Adams, 771 F.2d 783, 787 (3rd Cir.1985); it would be fruitless to try to decide this case by reference to a settled meaning for the term. However, Iowa's deferred-judgment procedure, which has counterparts in several other states, was before the Supreme Court in Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), and the Court held that a person sentenced under that procedure is convicted--at least for purposes of Title IV of the Gun Control Act of 1968, 18 U.S.C. Secs. 922(g)(1), (h)(1). The qualification is important. The cited sections made it unlawful for a person who was either under indictment for a felony or had been convicted of one to transport or receive any firearm or ammunition in interstate commerce. The Court held that "for purposes of the federal gun control laws, we equate a plea of guilty and its notation by the state court, followed by a sentence of probation, with being 'convicted' " within the meaning of sections 922(g) and (h). 460 U.S. at 114, 103 S.Ct. at 992.
 
 
 7
 Despite the resemblance to the present case, Dickerson cannot carry the day for the government. As the quoted language and much else in the opinion indicate, the Court based its holding, in part anyway, on the purposes of the gun laws. It also stressed a textual point. The statute applied to indictments as well as convictions, and this was an indication of the urgency of Congress's desire to keep guns out of the hands of presumptively dangerous people. See id. at 112 n. 6, 103 S.Ct. at 991 n. 6, Section 504 of the Labor-Management Reporting and Disclosure Act has no comparable provision. Nor do the gun control laws mention "judgment," as section 504 does. Harmon also argues (though unavailingly, as we shall see) that the provision in section 504(a) that allows the job ban to be lifted if the convicted person's citizenship rights are restored implies that only convictions which remove those rights are within the statute's reach. Finally, there is the fact that Congress overruled Dickerson, see Firearms Owners' Protection Act, Public Law 99-308, Secs. 102(6), 104(b), 100 Stat. 449, 452, 459 (1986); United States v. Pennon, 816 F.2d 527, 529 (10th Cir.1987), although it is unclear whether Congress thought that the Supreme Court had misinterpreted the previous statute, or just changed its own collective mind.
 
 
 8
 Section 504 dates back to 1959. It has been amended since, most recently to eliminate the reference to the soon-to-be-abolished Parole Commission; as of November 1 of this year, persons seeking relief from the job ban under this provision will have to petition either the federal district court that sentenced them, in the case of a federal crime, or the federal district court for the district in which they live, in the case of a state crime. But none of the amendments bears on the question in this case. We can find no evidence that Congress has ever been aware of the deferred-judgment procedure in deliberating on section 504. If the provision on citizenship rights suggests that Congress assumed that all criminal convictions result in suspension of citizenship rights, the history of the statute refutes the suggestion. The bill passed by the Senate (S. 3974, 85th Cong., 2d Sess.) was explicitly limited to convictions that result in a loss of the right to vote. This feature was sharply criticized in the House (see 105 Cong.Rec. 1596-97 (1959) (remarks of Congressman Loser)) and does not appear in the enacted statute. The statute is not limited to convictions that result in losing the rights of a citizen; and since this feature was discussed on the floor, Congress almost certainly knew that the provision concerning restoration of rights would not apply to all convictions that triggered the job ban.
 
 
 9
 Textual arguments cannot carry the day for Harmon. Although it is anomalous that the statute as interpreted by the government should create an additional method for lifting the job ban for anyone so fortunate, as it were, to suffer the revocation of his citizenship rights, it would be even more anomalous if Harmon could escape the statute merely because a formal judgment of conviction was not entered even though a criminal sanction--probation--was imposed. The statutory reference to "judgment" hardly seems significant. So far as appears, the word was used only to indicate when a person is convicted, for purpose of determining when the period of disability begins to run.
 
 
 10
 To interpret the statute, we must consider its purpose. That is often a difficult thing to do; as the Supreme Court has reminded recently, statutes are frequently the product of compromise, and a legislative compromise would be undone if a court enforced the maximum position of one of the negotiating factions. See Rodriguez v. United States, --- U.S. ----, 107 S.Ct. 1391, 1393, 94 L.Ed.2d 533 (1987). This is doubtless true of the Labor-Management Reporting and Disclosure Act (as of virtually all labor legislation) as a whole. But section 504 does not have the appearance of a hard-fought compromise, least of all a compromise on whether a formal judgment of conviction is required to trigger the job ban; nor does Harmon argue that it was a compromise. The relevant purpose seems obvious, and valid concerns about the general difficulty of discerning the purpose of a heterogeneous collective body such as the Congress of the United States must not be allowed to blind us to the obvious. Congress thought that persons who commit serious crimes should not be permitted to hold union office until a healthy period of time had elapsed after their punishment. But it did not propose to require the Secretary of Labor to determine whether a person had committed a crime. It was content to allow him to rely on a judicial determination. Whatever else Iowa's deferred-judgment procedure may be--a device for inducing guilty pleas and saving the state the cost of criminal trials (see Note, The Elimination of Plea Bargaining in Black Hawk County: A Case Study, 60 Ia.L.Rev. 1053, 1065, 1067 (1975)), a device for reducing the prison population, a device for facilitating rehabilitation of criminals--it is an authoritative determination of criminal guilt, though technically not an adjudication of guilt, see State v. Farmer, 234 N.W.2d 89, 92 (Ia.1975). As we noted in a case a little like this, where the question was whether an arbitrator could conclude that a person punished under Indiana's deferred-judgment procedure had engaged in "conduct ... leading to conviction" within the meaning of a collective bargaining contract that entitled the employer to discharge an employee who engaged in such conduct, government in this country is not permitted to impose criminal punishments, such as probation, without a determination of guilt. Hill v. Norfolk & Western Ry., 814 F.2d 1192, 1196 (7th Cir.1987). That determination was made here; nor does Harmon deny that he is an arsonist.
 
 
 11
 The significance of the Iowa procedure is that it reduces the severity of the criminal sanction. This is not a good reason for placing the criminal beyond the reach of section 504. That section automatically adjusts for the severity of the sanction by making the period of disability run from either conviction or the end of imprisonment--whichever is later. The heavier the sentence, the longer the period of disability. It is true that a criminal who receives such a light sentence that it doesn't revoke his citizenship rights can't use one of the three routes to shortening the period, but the other two routes must as a practical matter be easier to use the lighter the sentence is.
 
 
 12
 Earlier we offered conjectures on the purposes behind Iowa's procedure. Only one thing is certain: in deciding whether to use the procedure, Iowa judges do not consider the effect on the policies behind the Labor-Management Reporting and Disclosure Act. The Department of Labor is unlikely to learn about the criminal proceeding till it's over, and state judges and state and local law enforcement personnel have no responsibility for enforcing the Act. It would be a potentially serious interference with the administration of section 504 if the decision by the state court to proceed under the deferred-judgment procedure exempted the defendant from the job ban in the statute.
 
 
 13
 We can think of many reasons why Congress if it had known of the procedure would not have wanted to exclude "convictions" under it from the job ban, and no reasons why it would have wanted to exclude them. We conclude that "conviction" within the meaning of section 504 includes punishment under the deferred-judgment procedure. Although every statute attaching disabilities to a convicted person must be evaluated in terms of its own language and purpose, we are reinforced in our conclusion by the fact that sentences under deferred-judgment procedures have generally been treated as convictions under such statutes. Besides Dickerson and Hill, see Nunez-Payan v. INS, 811 F.2d 264, 266-67 (5th Cir.1987) (per curiam); United States v. Pennon, supra, 816 F.2d at 528-29, and cases cited there; Hafelfinger v. District Court, 674 P.2d 375, 377-78 (Colo.1984); cf. United States v. Adams, supra, 771 F.2d 786-89; State v. Braithwaite, 92 Wash.2d 624, 600 P.2d 1260 (1979); but see State v. Burk, 101 N.Mex. 263, 680 P.2d 980 (Ct.App.1984). Of course we need not decide whether, if the disability had been imposed by Iowa rather than federal law, the deferred-judgment procedure would have saved Harmon from it. Cf. Gunter v. State, 182 Ga.App. 548, 356 S.E.2d 276 (1987).
 
 
 14
 AFFIRMED.
 
 
 
 *
 Hon. Robert A. Grant of the Northern District of Indiana, sitting by designation