NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0631n.06

No. 16-1467

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ROBERT DAVIS, | ) | **FILED** |
|  | ) | Nov 29, 2016 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) | ON APPEAL FROM THE |
|  | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| PROFESSIONAL REPRESENTATIVES | ) | DISTRICT OF MICHIGAN |
| ORGANIZATION and MICHIGAN AFSCME | ) |  |
| COUNCIL 25 AFL-CIO, | ) |  |
|  | ) | OPINION |
|  | ) |  |
| Defendants-Appellees. | ) |  |

BEFORE:      McKEAGUE, KETHLEDGE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  Robert Davis pled guilty to two felonies for embezzling nearly $200,000 from a school district whose employees were represented by his employer, defendant AFSCME.  After the guilty plea, but three months before judgment was entered, AFSCME fired Davis.  Davis brought a hybrid action under § 301 of the National Labor Relations Act against the union representing him, the Professional Representatives Organization (PRO), alleging that it breached its duty of fair representation, and against AFSCME, alleging that it violated the collective bargaining agreement (CBA) between PRO and AFSCME by wrongfully terminating him.  The factual allegations in Davis's complaint are insufficient to show that his guilty plea did not give AFSCME just cause to fire him.  Because Davis insufficiently alleged wrongful termination, we AFFIRM the district court's grant of AFSCME's

motion to dismiss, the corresponding dismissal of Davis's hybrid claim against PRO, and the denial of Davis's motion for reconsideration.

## I. BACKGROUND

In 2007, Davis used his position as a school board member to embezzle $197,983 from the Highland Park School Board, while his employer, AFSCME, was representing employees of the Highland Park School District. In late August 2014, as Davis was considering a plea offer, Davis and his criminal defense attorney met with AFSCME's president and legal counsel. They advised Davis and his attorney of AFSCME's position that federal law, 29 U.S.C. § 504, prohibited AFSCME from continuing to employ Davis if he pled guilty. Davis's attorney disputed the correctness of that legal position, arguing that Davis would not be deemed "convicted" for purposes of § 504, and thus would not be subject to its bar on union employment, until the judge entered a criminal judgment. Nonetheless, according to Davis's complaint, AFSCME's president advised Davis that he would "take the advice of . . . AFSCME's legal counsel and err on the side of caution and immediately terminate Plaintiff Davis from his employment if Plaintiff Davis decided to accept the Government's plea offer to plead guilty to two felonies." R. 47, PageID 698–99.

Davis pled guilty to two felony counts on September 2, 2014. The following day, AFSCME removed Davis from his duties, suspended him without pay, and scheduled a disciplinary hearing. On September 18, following a disciplinary hearing with representatives of both AFSCME and PRO, AFSCME terminated Davis's employment for reasons related to his guilty plea. On December 18, the district court sentenced Davis to serve eighteen months in a minimum security camp. The district court signed and entered the criminal judgment against Davis on December 29.

Immediately following his September 18 disciplinary hearing, Davis requested that PRO file a grievance against AFSCME, which PRO filed and pursued in accordance with the grievance procedure set forth in the CBA. AFSCME denied the grievance. Davis then requested that PRO pursue arbitration of his grievance. PRO rejected Davis's request to pursue arbitration, citing the Department of Labor's interpretation of 29 U.S.C. § 504, which PRO read to immediately bar Davis's employment in his union position. Davis appealed that rejection to PRO's Executive Board, which voted not to reverse the rejection. According to his complaint, Davis then attempted to appeal the Executive Board's decision to the membership at large, but did not have the opportunity to do so. Davis's complaint alleged that he learned through private conversations at the time that some members and officers of PRO were attempting to stall or derail his attempts to have his grievance arbitrated, and that some members had a personnel dislike for Davis. The Executive Board's prior rejection notwithstanding, on December 5, PRO filed a demand with the American Arbitration Association for arbitration of Davis's grievance; however, in February 2015, Davis learned that PRO had withdrawn this arbitration demand as a result of Davis's prison sentence.

Davis sued AFSCME and PRO in a hybrid action under § 301 of the National Labor Relations Act for wrongful termination and breach of the duty of fair representation, respectively. Davis seeks back pay, wages, and benefits from AFSCME for a period of less than four months from September 3, 2014 (the date of his suspension without pay) through December 29, 2014 (when the district court entered the judgment against him). The district court granted AFSCME's motion to dismiss under Fed. R. Civ. P. 12(b)(6) and dismissed all of Davis's claims, including those against PRO. The district court found that the 29 U.S.C. § 504 bar on continued

union employment could be read to have gone into effect upon Davis's guilty plea, thereby authorizing or requiring AFSCME to terminate Davis when it did. Davis timely appealed.

## II.    ANALYSIS

This circuit reviews de novo a district court's decision to grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009). Statutory interpretation also receives de novo review. *United States v. Brown*, 639 F.3d 735, 737 (6th Cir. 2011).

To survive a motion to dismiss a hybrid action under § 301, a plaintiff must show both his employer's breach of the CBA *and* his union's breach of the duty of fair representation. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165 (1983). "Unless a plaintiff 'demonstrates both violations, he cannot succeed against either party.'" *Garrison v. Cassens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003) (quoting *Bagsby v. Lewis Bros. Inc. of Tenn.*, 820 F.2d 799, 801 (6th Cir. 1987)). Here, Davis must have alleged facts showing both that (1) AFSCME breached its CBA with PRO by wrongfully terminating him and (2) PRO breached its duty of fair representation to Davis.

The district court dismissed Davis's claims against both defendants because it found that Davis failed to sufficiently allege wrongful termination in breach of the CBA. Whether Davis sufficiently alleged wrongful termination is the sole issue for consideration on appeal. The CBA permitted AFSCME to terminate employees for "just cause." Davis raises only one argument on appeal as to why AFSCME did not have "just cause" to terminate him after his guilty plea: he argues that 29 U.S.C. § 504, upon which AFSCME relied in terminating him, did not require his termination until judgment was entered against him on the criminal charges.

In general terms, § 504 prohibits persons "convicted" of listed felonies from serving in certain union positions for thirteen years. 29 U.S.C. § 504(a). If a convicted person continues to serve in a prohibited union position after that date, § 504 penalizes both the convicted person *and* any person who retains or employs the convicted person in the prohibited union position with a fine of up to $10,000 or imprisonment of up to five years. 29 U.S.C. § 504(a), (b). The regulations implementing § 504 allow unions to set stricter standards, including "extending the period of disability" (the bar from union employment) beyond that established by § 504. 29 C.F.R. § 452.34.

## A.     Just Cause For Termination Under The CBA

The CBA between AFSCME and PRO, which covered the employment of Davis, provides that "all disciplinary actions shall be for just cause." R. 16-2, PageID 220. It continues:

> In keeping with the concept of just cause, discipline, where appropriate, will be progressive in nature, except that nothing in this Article shall prevent the Employer from taking immediate and appropriate disciplinary action should it be required by the circumstances, with proper written notice thereof to the Union at the time such immediate action is taken.

*Id.* The CBA also gives AFSCME "the sole and exclusive right to manage its offices, determine the size of its work force, and direct its affairs and work force . . . ." *Id.* at 217.

Davis's complaint argued that AFSCME did not have "just cause" to terminate him on September 18, 2014. Davis, however, made no allegations regarding what the parties to the CBA intended the term "just cause" to mean. Instead, the complaint made the following conclusory allegation: "Davis claims that Defendant AFSCME did not have 'just cause' to so terminate Plaintiff Davis on September 18, 2014. 'Just cause', as contained in Article 9, Section 1 of the CBA did not exist with respect to Plaintiff Davis' facts and situation on September 18,

2014." R. 47, PageID 710. Davis followed this allegation with citations to two exhibits: (1) the grievance PRO filed with AFSCME on his behalf; and (2) his letter appealing PRO's rejection of his request to pursue arbitration. *Id.* The grievance filed by PRO was brief and did not include any factual allegations explaining why AFSCME did not have just cause to terminate Davis. Davis's letter appealing PRO's rejection of his arbitration request challenged only PRO's legal determination that 29 U.S.C. § 504 barred Davis's employment as of his guilty plea. These two exhibits and the brief allegations regarding just cause in the complaint provide the entire basis upon which Davis's wrongful termination claim stands.[1]

Davis's argument thus boils down to a single allegation: AFSCME lacked just cause because it misinterpreted 29 U.S.C. § 504, which Davis contends did not bar his employment until the date judgment was entered against him. In his brief on appeal, Davis only makes arguments about the proper interpretation of § 504—he does not address "just cause" directly at all.

Davis's allegations below and his briefing on appeal are insufficient to show that AFSCME wrongfully terminated Davis in breach of the CBA. Davis's single argument, that AFSCME did not have just cause because it misinterpreted § 504's mandate, lacks merit. Regardless of what § 504 might mandate, the question here is whether the CBA *permitted* AFSCME to terminate Davis after his guilty plea. AFSCME risked a $10,000 fine, and its officers risked imprisonment, if they continued to retain Davis as an employee in violation of

---

[1]Davis also alleged in his complaint that many union leaders and members lobbied AFSCME to retain his employment even after his guilty plea, and that AFSCME selected Davis to represent it at a Harvard program after his indictment (but before his guilty plea). The complaint argued that this continued support demonstrated that his guilty plea did not risk disrepute to AFSCME, and thus disrepute could not be a basis for just cause. Davis does not raise this argument on appeal, but even if he had, the opinions of some union leaders and members in support of Davis are irrelevant to whether Davis's guilty plea gave AFSCME just cause to end his employment.

§ 504. 29 U.S.C. § 504(a), (b). As discussed in detail below, the Department of Labor's interpretation of the statute and caselaw could reasonably lead AFSCME to conclude that it was legally prohibited from continuing to employ Davis after his guilty plea. AFSCME gave Davis fair warning, based on the advice of counsel, that its interpretation of § 504 required it to terminate him if he pled guilty, and he chose to do so anyway.

The regulations implementing § 504, moreover, allow unions to set stricter standards. 29 C.F.R. § 452.34. Therefore, regardless of whether § 504 itself barred Davis's employment as of his guilty plea, the law permitted AFSCME to consider Davis ineligible from an earlier date than § 504. AFSCME's good-faith interpretation of § 504, along with its right to set stricter standards for itself, provided just cause for Davis's termination after his guilty plea. Davis has alleged no fact showing that the CBA did not permit AFSCME, in the face of its own potential liability, to interpret § 504 cautiously or rely on its right to set stricter standards. Davis's allegations of wrongful termination in breach of the CBA are thus insufficient and the Rule 12(b)(6) motion of AFSCME was properly granted.

**B.** **"Conviction" Under 29 U.S.C. § 504**

Although Davis has failed to allege a breach of the CBA, to the extent that the interpretation of 29 U.S.C. § 504 is relevant here, legal authorities suggest that the § 504 bar may well have applied to Davis as of his guilty plea. Section 504(a) states:

> No person . . . who has been *convicted* of . . . embezzlement, grand larceny . . . [or] any felony involving abuse or misuse of such person's position or employment in a labor organization . . . shall serve or be permitted to serve— . . . (5) in any capacity, other than in his capacity as a member of such labor organization, that involves decisionmaking authority concerning, or decisionmaking authority over, or custody of, or control of the moneys, funds, assets, or property of any labor organization, during or for the period of thirteen years after such *conviction* or after the end of such imprisonment, whichever is later, unless the sentencing court on the motion of the person *convicted* sets a lesser period of at least three years after such *conviction* or after the end of such

> imprisonment, whichever is later . . . . No person shall knowingly hire, retain, employ, or otherwise place any other person to serve in any capacity in violation of this subsection.

29 U.S.C. § 504(a) (emphasis added). The act further states that "[a] person shall be deemed to have been 'convicted' and under the disability of 'conviction' ***from the date of the judgment of the trial court***, regardless of whether that judgment remains under appeal." 29 U.S.C. § 504(c)(1) (emphasis added).

By its text, § 504's prohibition begins on "the date of the judgment of the trial court." *Id.* The question, then, is whether the "date of the judgment of the trial court" refers only to the date on which the district court signed and entered the formal criminal judgment, or whether "conviction" and "judgment" have broader meaning and include guilty pleas. Without offering any supporting cases, Davis argues that § 504(c) on its face gives "conviction" a narrow definition that plainly excludes a guilty plea.

The Department of Labor's Office of Labor-Management Standards (OLMS) states its official interpretation of § 504 on its website: "For purposes of Section 504, a judgment of conviction includes a finding or plea of guilty, or an equivalent procedure, such as a plea of no contest to a disqualifying crime described in Section 504, and a sentence or other punitive disposition of the case by the trial court." Office of Labor-Mgmt. Standards, U.S. Dep't of Labor, *Prohibition against Certain Persons Holding Union Office or Employment*, https://www.dol.gov/olms/regs/compliance/504unionoffhold.htm (last updated Mar. 5, 2013).

The district court found § 504's text inconclusive and looked to its legislative history to identify its purpose. "Courts have unanimously held that § 504 must be given broad application in light of the Congressional intent to purge the labor movement of its criminal element . . . [and] have refused to put form ahead of substance." *Davis v. Prof'l Representatives Org.*, No. 15-10767, 2016 WL 1054505, at *3 (E.D. Mich. Mar. 16, 2016) (quoting *Illario v. Frawley*, 426 F.

Supp. 1132, 1137 (D.N.J. 1977)). The district court also looked to OLMS's official interpretation of § 504. The district court read the OLMS statement to refer to two options that can constitute a judgment of conviction: either a plea or equivalent procedure, or a punitive disposition such as a sentence. *Id.* at*4. Davis argues instead that the statement means only that a guilty plea *plus* a sentence (or an equivalent procedure plus a sentence) constitutes a conviction for § 504—and thus that a guilty plea by itself does not. Although the OLMS statement's intent is not entirely clear, we agree that the district court's reading is logical. If OLMS intended that a judgment of conviction meant only a plea plus a sentence, it would be strange to use the word "includes," which suggests the introduction of a non-exhaustive list. To the extent that the statement is ambiguous, it was reasonable for AFSCME to interpret it broadly to protect itself from potential liability, especially given the broad interpretation of § 504 in the caselaw.

In the only court-of-appeals case to directly address the bounds of a "conviction" for purposes of § 504, Judge Posner, writing for the Seventh Circuit, held that "conviction" in § 504 includes a guilty plea followed by a sentence of probation without a judgment of conviction (under Iowa's deferred-judgment procedure). *Harmon v. Teamsters, Chauffeurs & Helpers Local Union 371*, 832 F.2d 976, 980 (7th Cir. 1987). *Harmon* found the text of § 504 inconclusive, and looked to the statute's legislative history to define its purpose. *Id.* at 978–79. "The word 'conviction' is a chameleon" wrote Judge Posner, such that "it would be fruitless to try to decide this case by reference to a settled meaning for the term." *Id.* at 978. The Supreme Court has noted that "conviction" has different meanings in different states and under different federal statutes. *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 112 & n.6 (1983); *accord Transp. Workers Union of Am., AFL-CIO v. Transp. Sec. Admin.*, 492 F.3d 471, 473 (D.C. Cir. 2007). The Tenth Circuit, for example, held that a conviction occurs upon entry of a guilty plea

for purposes of forfeiting time on parole, but it held two years later that a conviction for purposes of adjudicating juvenile delinquency occurs not upon the plea but upon the entry of judgment. *Compare DeCuir v. U.S. Parole Comm'n*, 800 F.2d 1021, 1023 (10th Cir. 1986), *with United States v. Steven W.*, 850 F.2d 648, 649 (10th Cir. 1988). Furthermore, the Supreme Court (albeit long ago) said that a "plea of guilty . . . is itself a conviction." *Kercheval v. United States*, 274 U.S. 220, 223 (1927). This analysis supports our determination that AFSCME acted reasonably to protect the union and its officers by assuming that a guilty plea may constitute a conviction.

Davis also argued in the district court (but less clearly on appeal) that his position is supported by a letter he received from the Department of Labor regarding the duration of his bar from union employment. However, the letter merely calculates the end date of his bar, without commenting on the start date. The letter states that his bar will extend thirteen years from the end of his imprisonment, because that is later than the date of his conviction. The letter does suggest that its author, Ian Burg, a District Director for the OLMS Division of Enforcement, thought "conviction" could refer to Davis's sentencing rather than his guilty plea, but the letter also specifically states that the technical date of Davis's conviction is irrelevant for determining the prohibition's end date. As the district court noted, the letter provides no indication that the Department of Labor considered whether a guilty plea qualified as a conviction in this case, because it was unnecessary for the subject of the letter. Therefore, the district court correctly held that this letter was insufficient support for Davis's interpretation of § 504.

Davis has no other arguments or caselaw supporting his interpretation. The weight of agency interpretation, legislative history, and caselaw suggests that AFSCME's interpretation that § 504 could apply at the time of Davis's uncontested guilty plea was reasonable. And the

implementing regulations authorize a union to impose a stricter ban. In light of these authorities and because AFSCME and its officers faced a legitimate risk of a substantial fine or imprisonment for violating § 504 if they retained Davis, AFSCME had just cause to terminate him and did not breach the CBA.

### C.        Duty Of Fair Representation

Because Davis failed to adequately allege that AFSCME breached the CBA, we need not reach the question of whether he adequately alleged that PRO breached its duty of fair representation. *See Garrison*, 334 F.3d at 538 (noting that a plaintiff cannot succeed on either claim without establishing both).

### D.        Motion For Reconsideration

Davis also appeals the district court's denial of his motion for reconsideration under Local Rule 7.1(h) and Fed. R. Civ. P. 59(e) and for relief from judgment under Fed. R. Civ. P. 60(b)(2). This court reviews Rule 59(e) and Rule 60(b) decisions for abuse of discretion. *Clark v. United States*, 764 F.3d 653, 661 (6th Cir. 2014); *Franklin v. Jenkins*, 839 F.3d 465, 472 (6th Cir. 2016). Davis argues that a new email he received from Mr. Burg after the district court's decision constituted "newly discovered evidence" that is "controlling and clearly would have produced a different result if presented before the original judgment." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (quoting *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998)) (explaining the Rule 60(b)(2) standard).

The email Davis received from Mr. Burg following the district court's judgment stated that: "For purposes of the Section 504 bar, the date someone is sentenced, not the guilty plea or guilty verdict date, is known as the conviction date." R. 76-2, PageID 1146. This statement neither controls nor would have produced a different result. It does not control because it was

not promulgated by the agency in the exercise of rule-making authority, and thus does not merit

*Chevron* deference. *See United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001) (interpreting

*Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.* 467 U.S. 837 (1984)). Instead, this email is

merely persuasive, and its weight is to be judged in part by the thoroughness of its reasoning. *Id.*

at 221, 235 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944)). The email includes no

reasoning or basis for Mr. Burg's statement, severely limiting its persuasiveness. It also would

not have produced a different result because, as discussed above, AFSCME was within its rights

to terminate Davis to avoid the risk of potential liability under § 504, regardless of the OLMS's

position. The district court did not abuse its discretion by denying Davis's motion for

reconsideration.

## III.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of AFSCME's motion to

dismiss, its corresponding dismissal of Davis's hybrid claim against PRO, and its denial of

Davis's motion for reconsideration.